COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Bray
Argued at Richmond, Virginia


LARRY ANTONIO NEBLETT

MEMORANDUM OPINION* BY
v.    Record No. 1247-00-2        JUDGE JERE M. H. WILLIS, JR.
                                       AUGUST 21, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
James B. Wilkinson, Judge

Patricia P. Nagel, Assistant Public Defender
(David J. Johnson, Public Defender; Office of
the Public Defender, on brief), for
appellant.

Shelly R. James, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Pursuant to the mandate of our memorandum opinion issued

herein on May 22, 2001, the trial court entered two orders dated

August 2, 2001, nunc pro tunc April 5, 2000 and May 18, 2000

respectively, correcting clerical errors in its orders of April 5

and May 18, 2000, and clarifying and confirming that it was the

trial court's judgment to convict Larry Antonio Neblett of

breaking and entering on January 11, 2000, as charged in

Indictment No. 00-380-F and to acquit him of breaking and entering

on January 27, 2000, as charged in Indictment No. 00-379-F.

───────────────
* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Whereupon, it appears that Larry Antonio Neblett stands convicted in the trial court of breaking and entering on January 11, 2000, as charged in Indictment No. 00-380-F and he stands acquitted of breaking and entering on January 27, 2000, as charged in Indictment No. 00-379-F.  On appeal, Neblett contends that the trial court erred in finding the evidence sufficient to support his conviction.  We affirm the judgment of the trial court.

> When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom.

Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 718, 721 (1988).

> The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Yvette Pelt and Neblett enjoyed a romantic relationship.  Pelt allowed Neblett to stay at her house.  The relationship became contentious.  Pelt testified that on January 11, 2000, they got into an argument.  She stated:

> I loaned [Neblett] some money and in turn he was supposed to pay me back.  However, he never did.  And, he had two televisions at my home in lieu of the money.  And, in the event he didn't pay me it was kind of like a

-

consignment type thing.  And, he never paid me back on that day that he promised to pay me back.  And, we had an argument.  And, he decided he wanted to take the televisions with him.  And, I told him he wasn't going to unless he gave me the money.  And, in turn I locked my door.  I asked him to leave, locked my door, and two seconds later he kicked the door in and insisted on taking the televisions.  At that point he had taken them and I had called 9-1-1.  I felt like they were mine.

Pelt's testimony supports the trial court's determination that Neblett broke and entered Pelt's dwelling house with the intent to steal the television sets that he had "consigned" to her in payment of his indebtedness to her.  Thus, Neblett's conviction is supported by credible evidence.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>

-

COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Elder and Bray
Argued at Richmond, Virginia


LARRY ANTONIO NEBLETT

                                    MEMORANDUM OPINION* BY
v.    Record No. 1247-00-2          JUDGE JERE M. H. WILLIS, JR.
                                          MAY 22, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     James B. Wilkinson, Judge

            Patricia P. Nagel, Assistant Public Defender
            (David J. Johnson, Public Defender; Office of
            the Public Defender, on brief), for
            appellant.

            Shelly R. James, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     On appeal from his bench trial convictions of arson, in

violation of Code § 18.2-77, and breaking and entering, in

violation of Code § 18.2-91, Larry Antonio Neblett contends that

the trial court erred (1) in permitting the Commonwealth's

expert witness to testify regarding the ultimate issue in the

arson case and (2) in concluding that the evidence was

sufficient to support both convictions.  For the reasons that

follow, we affirm in part and remand.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

-

## I.   BACKGROUND

Yvette Pelt and Neblett began a romantic relationship, and Pelt allowed Neblett to stay at her house.  The relationship became contentious.  Pelt testified that they got into an argument on January 11, 2000.  She stated:

> I loaned [Neblett] some money and in turn he was supposed to pay me back.  However, he never did.  And, he had two televisions at my home in lieu of the money.  And, in the event he didn't pay me it was kind of like a consignment type thing.  And, he never paid me back on that day that he promised to pay me back.  And, we had an argument.  And, he decided he wanted to take the televisions with him.  And, I told him that he wasn't going to unless he gave me the money.  And, in turn I locked my door.  I asked him to leave, locked my door, and two seconds later he kicked the door in and insisted on taking the televisions.  At that point he had taken them and I had called 9-1-1.  I felt like they were mine.

Pelt testified that a neighbor repaired her door and that she later allowed Neblett to return.  Pelt stated that on January 27, 2000, she told Neblett that she no longer wanted to see him.  He became "upset."  That evening, she "heard the door bash open" and "[Neblett] was standing in [her] foyer."  Pelt testified that Neblett's "eyes were red," he was "staggering," and she could smell alcohol on his breath.  Neblett went to the basement and stated, "I'm not going anywhere, I am not leaving."  Pelt, her daughter, and a guest who was present left the house.  Pelt called the police from a nearby store.  Officer William Bryant arrived at the store to take her report and as she was

-

talking to him, someone ran past her and said a house was on fire.  The house was Pelt's.  It was destroyed by the fire.

William M. Martin of the Fire Marshall's Office investigated the fire.  Upon being qualified as an expert witness, Investigator Martin explained that fires are either accidental or intentional.  He identified photographs of several rooms in the house.  He discussed where the fires had been set and the burn patterns in those rooms.  He explained the fire's progress through the house and noted that no accelerants had been used.

Christopher Moody testified that, while returning home from the bank on the evening of January 27, 2000, he saw a fire inside Pelt's house.  He knocked on the front and rear doors "to wake up anybody who happened to be asleep inside."

William Downs testified that on January 27, 2000, he saw "a man run around from the side of the house through the front yard and into a car that was parked on the curb."  He testified that the car was a "blue sedan" bearing a license plate that read "Big L."  He stated that the man tried to drive away quickly, but had a difficult time because of the weather conditions.  He could not identify the man.

Lauren Vincelli testified to essentially the same facts as did Downs.  Specifically, she stated that she saw "a light blue four-door sedan stuck in the snow. . . . [I]t was trying pretty hard to get out of the snow. . . . [F]inally he did."  Vincelli

-

testified that the individual "definitely [had] the figure of a man," but she could not identify him.

Officer Bryant testified that on January 28, 2000, he told the officers on his shift to be "on the look-out for the Honda, license plate 'Big L'."  Later that day, Officer Bryant was contacted by two other officers who had stopped a car with this license plate.  He went to where the car was stopped and saw Neblett standing next to the Honda bearing the license plate "Big L."

Neblett presented no evidence.

## II.  <u>EXPERT WITNESS TESTIMONY</u>

Neblett contends that the trial court committed reversible error by allowing Investigator Martin to testify upon the ultimate issue of fact.  The Commonwealth contends that this issue is barred by Rule 5A:18 because Neblett did not specify this objection at trial.  We agree.

On direct examination, Investigator Martin testified, "[I]n this particular case I determined that it was not of accidental nature, so I started -- ."  Defense counsel objected, "Judge, I'm going to object to his opinion testimony unless some proper foundation can be made."

The Commonwealth's attorney proceeded to qualify Investigator Martin as an expert in fire investigations. Defense counsel cross-examined him as to his expertise.  He was

-

then received as an expert by the trial court. That ruling is not challenged on appeal.

Upon further direct examination, Investigator Martin was asked by the Commonwealth's attorney, "[C]an you tell the Judge if you know and what your opinion is, as to how these fires got started?" Defense counsel interjected, "Objection, Judge."

Neither objection asserted to the trial court that the witness was being called upon to testify as to the ultimate issue of fact. Thus, this contention on appeal is barred by Rule 5A:18. We perceive no reason to invoke the ends of justice exception to the operation of the Rule.

> [A] witness may detail the facts and observations which came to his attention while investigating the fire and may give his or her conclusions or opinions on such matters as where the fire started, the cause or source of ignition, how it proceeded, and whether and why certain accidental causes can be eliminated. However, the court must "permit the jurors to draw their own conclusions as to the cause" of the fire.

Callahan v. Commonwealth, 8 Va. App. 135, 139, 379 S.E.2d 476, 479 (1989) (citation omitted).

### III.  SUFFICIENCY OF THE EVIDENCE

"When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom." Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 718,

-

721 (1988).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

## A.  ARSON

Although the arson case is based on circumstantial evidence, circumstantial evidence is sufficient to support a conviction.  See Hughes v. Commonwealth, 18 Va. App. 510, 518, 446 S.E.2d 451, 456 (1994) (en banc) (citation omitted).  Where "a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"  Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)). "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."  Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). "Whether a hypothesis of innocence is reasonable is a question of fact, and a finding by the trial court is binding unless plainly wrong."  Glasco v. Commonwealth, 26 Va. App. 763, 774, 497 S.E.2d 150, 155 (1998) (citation omitted).

-

The circumstantial evidence sufficiently supports Neblett's arson conviction.  Pelt testified that on the night of the fire, Neblett entered her house upset and intoxicated.  He was alone in the house for approximately twenty minutes before the fire was detected.  Mr. Downs and Ms. Vincelli saw a man running from the house and attempting to leave the area hurriedly in a "blue sedan" bearing the license plate "Big L."  Neblett was found in possession of that car.  This evidence is sufficient to support the arson conviction.

### B.  THE BURGLARY CHARGES

Two statutory burglary indictments were returned against Neblett.  Indictment No. 00-379-F charged him with statutory burglary on January 27, 2000.  Indictment No. 00-380-F charged him with statutory burglary on January 11, 2000.

At the conclusion of the trial, the trial judge stated from the bench:

> [T]he first one is when he kicked the door
> in. . . . Apparently to get his
> televisions. . . . I will find him guilty of
> that.  On the second one I have some
> question about.  I find him not guilty of
> the second B and E.
>
>  *       *       *       *       *       *       *
>
> On the first charge the Court is going to
> find you guilty of B and E, find you not
> guilty on the second charge.  That was the
> one on the 27th, I guess.

The trial order, entered April 5, 2000, states, in pertinent part:

-

>     Thereupon, it is Ordered that the
> defendant be, and he is hereby, acquitted of
> Break and Enter in Case No. 00-380-F.
>
>     Whereupon, the Court, having fully
> heard the evidence and argument of counsel,
> doth finds [sic] the defendant guilty as
> charged in Case No's. [sic] 00-379-F and
> 00-381-F, . . . .

This order bears the signature of the trial judge.

The sentencing order, entered May 18, 2000, provides, in

pertinent part:

>     On April 5, 2000, the defendant was found guilty
> by the Court of the following offense(s):
>
> | CASE NUMBER | OFFENSE DESCRIPTION AND INDICATOR (F/M) | OFFENSE DATE | VA. CODE SECTION |
> | --- | --- | --- | --- |
> | 00-379-F | Break and Enter (F) | 01/27/00 | 18.2-91 |
> | 00-381-F | Arson (F) | 01/27/00 | 18.2-77 |

This order also bears the trial judge's signature.

The trial judge's pronouncements from the bench compel the

conclusion that, at that time, he intended to convict Neblett of

statutory burglary on January 11, 2000, as specified in

Indictment No. 00-380-F, and to acquit him of statutory burglary

on January 27, 2000, as specified in Indictment No. 00-379-F.

Counsel for both sides on appeal have proceeded upon that

understanding.  However, both the trial order of April 5, 2000,

and the sentencing order of May 18, 2000, set forth a contrary

decision, namely:  that Neblett was convicted of statutory

burglary on January 27, 2000 and acquitted of statutory burglary

-

on January 11, 2000.  This disparity prevents our rendering a decision on this conviction.

Wherefore, it is ordered that this case is remanded to the trial court with direction:

(1) to ascertain whether the orders of April 5, 2000 and May 18, 2000 contain clerical errors or are accurate statements of the trial court's determinations;

(2) if the orders contain clerical errors, to render a correct statement of the dispositions therein reported;

(3) if the orders contain clerical errors, to render a correct disposition of Indictment No. 00-379-F and Indictment No. 00-380-F; and

(4) the trial court shall certify to this Court its order setting forth the determinations and actions required by this remand.

<u>Affirmed in part and remanded.</u>